# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § § § § § § § | |
| v. | | |
| DAVID COLLINS COX, | | Crim. Action No. SA-16-CR-741-XR |
| *Defendant.* | | |

## ORDER

Defendant, David Collins Cox, is charged with being a felon in possession of a firearm in violation of 18 U.S.C. 922. Pending before the Court is Defendant's motion to suppress. Defendant argues that police officers lacked probable to cause to enter his residence without a warrant and no exigent circumstances existed that allowed the officers to enter the residence.

## Background

On September 26, 2016, at 5:00 p.m., "911" received a call from a person reporting that two males had dragged a female inside a home located at 5714 Ben Casey. The caller reported that the woman was screaming they were going to kill her. The caller also reported that he saw one of the males holding an AR-15 rifle. Police officers responded to the call and went to the location. At 5:29 p.m., a second call to "911" was received. The caller reported that he saw the police officers "knocking" at the house and the caller reported "they" are still inside. The caller again reported one of the males has a rifle. The Incident Detail Report (Government Exhibit 2) reflects that an attempt was made to verify the caller's phone number with no success. At 5:47 p.m., a third call was received by "911" reporting that there were cameras at the location and the

1

individuals inside the home were able to see the officers from inside the location. The officers made no entry into the home that day and no search warrant was sought.

On September 27, 2016, at 8:42 a.m., "911" received a call stating that a female was "zip tied" in a closet at 5714 Ben Casey. The caller refused to provide his name. Government Exhibit 3.

During the hearing on the suppression motion, SAPD Officer Robert Aguilar testified that he was not present for any of the September 26 activity. On September 27, Officer Aguilar was on "direct patrol." While on patrol he became aware that officers were responding to 5714 Ben Casey in response to the 8:42 call. He recognized the address and knew that David Cox lived there. He knew that Cox was suspected of being involved in the burglary of vehicles. En route to serving as backup to the call, he ran a background check and knew that Cox had been charged with being a felon in possession of a weapon. He did not know the disposition of that charge. He noted that calls had been made about the residence the previous day.

Officer Aguilar testified that because of the nature of the September 27 call, his suspicion that Cox may have been involved in criminal activity, and that an assault weapon may be at the residence, he approached the scene with caution. When Officer Aguilar arrived at the scene, Officer Brooks told him that he saw an individual inside the home. The officers also noted the presence of cameras outside of the home. A knock was made at the door and Cox answered the door. Cox was asked to step outside, asked if anyone else was in the house, and temporarily detained. A second male inside the house was also asked to step outside and detained. One officer remained outside with Cox and the other male.

Officer Aguilar and another officer entered the residence without a warrant and did a protective sweep of the premises and searched for the woman reported as being "zip tied." In a laundry room, Officer Brooks saw the barrel of an AR-15 sticking out of a pile of laundry. The laundry was briefly examined to determine if a woman was being hidden there. During the protective sweep/search for the woman, officers saw on the kitchen table screens that monitored the outside cameras and what appeared to be methamphetamine. The officers also saw that trash cans were stuffed with what appeared to be stolen items (purses, etc.). No "zip tied" woman or any other person was found inside the residence. The protective sweep/search for a woman took two to three minutes to complete. Officer Aguilar testified that only rooms, the laundry pile, and closets were searched for the presence of any woman being involuntarily held.

After the protective sweep/search for a woman was accomplished, the officers exited the residence, called a detective, and a search warrant was obtained. Additional methamphetamine and weapons were discovered during that search.

**Analysis**

Searches and seizures inside a home without a warrant are presumptively unreasonable. *Kentucky v. King*, 563 U.S. 452, 459 (2011); *United States v. Toussaint*, 838 F.3d 503, 507 (5th Cir. 2016).

But the Supreme Court has also "recognized that this presumption may be overcome in some circumstances because '[t]he ultimate touchstone of the Fourth Amendment is reasonableness.'" *Kentucky v. King*, 563 U.S. at 459. One example where the warrant requirement may be excused is the "emergency aid" exception, where officers may enter a home

3

to "render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Id*. at 460.

Defendant argues that this exception should not apply because given the totality of the circumstances, police officers should have done further investigation into the reliability of the 911 calls made on September 26 and 27 prior to making entry. He suggests that interviews should have been done of nearby individuals and neighbors on the early evening of September 26. Defendant further suggests that it was obvious that the caller was inherently untrustworthy and was attempting to set him up. Lastly, Defendant argues that if the exception were to apply in the facts of this case, there would be no limitations to its application.

In determining whether an officer acted reasonably in an emergency aid case, the Fifth Circuit has stated the following:

> "[a]n action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action.'" "The officer's subjective motivation is irrelevant." Thus, in evaluating whether an exigency actually existed, courts must examine whether there was an objectively reasonable basis for such a belief, divorced from the officer's conduct. And "[w]hen reasonable minds may disagree, we 'will not second guess the judgment of experienced law enforcement officers concerning the risks of a particular situation.'"
>
> "Because it is essentially a factual determination, there is no set formula for determining when exigent circumstances may [exist]." *United States v. Jones*, 237 F.3d 716, 720 (6th Cir. 2001). Nevertheless, a court "should consider the appearance of the scene of the search in the circumstances presented as it would appear to reasonable and prudent men standing in the shoes of the officers." In addition to determining whether there was an objectively reasonable basis for identifying an emergency, courts must decide whether the officer who engaged in conduct without a warrant acted reasonably. The existence of an emergency cannot, by itself, immunize the conduct of the officer from scrutiny.

*Toussaint*, 838 F.3d at 508–09.

The burden is on the government to prove the existence of the emergency aid exception to the warrant requirement. *See United States v. Rico*, 51 F.3d 495, 501 (5th Cir. 1995).

In this case there was an objectively reasonable basis for believing that a woman was inside the home in need of immediate aid. The officers entering the home on September 27 did not know why police officers decided against making entry the evening before. Nor did they know whether a search warrant was requested the night before, and if not, why no warrant was sought. These police officers only knew that a 911 call was again made that morning reporting that a woman was being held at the residence "zip tied." They were aware that an AR-15 rifle may be at the residence and that a suspected burglar lived there.

There is no evidence or argument in this case that the police officers created any exigent circumstances. Unlike *Brown*, where no 911 call was reported, and officers entered a residence just to satisfy themselves that everything was ok in the residence, s*ee United States v. Brown*, 230 F. Supp. 3d 513, 525 (M.D. La. 2017), these officers responded to a 911 call. They acted reasonably upon approaching the house. They knocked on the door, requested that the males inside the residence exit, and conducted an extremely brief protective sweep of the home, while looking to see whether a woman was being involuntarily held. Upon satisfying themselves that no one else was inside the residence, they exited the residence and requested that a detective obtain a search warrant based upon the drugs and weapon they saw in plain sight.

Defendant Cox infers that he had a falling out with someone and that person retaliated against him by making a false report that a woman was being held at the house against her will. Yet police officers are not required to interview neighbors and conduct surveillance before the emergency aid exception applies. *See Michigan v. Fisher*, 558 U.S. 45, 49 (2009) ("Officers do

not need ironclad proof of 'a likely serious, life-threatening' injury to invoke the emergency aid exception.").

Defendant Cox also argues that police officers responding to a residence still required probable cause before they can make a warrantless entry to render emergency aid. Defendant relies upon *United States v. Santiago*, 410 F.3d 193, 198 (5th Cir. 2005)[1] for the proposition that exigent circumstances must be in conjunction with and preceded by probable cause. "A warrantless entry into and search of a dwelling is presumptively unreasonable unless consent is given or probable cause and exigent circumstances justify the encroachment." *Id*. But this is not an exigent circumstances case. This is an emergency aid exception case.

This Court's understanding of *Kentucky v. King*, *supra* and *Toussaint*, *supra* indicates that any requirement of probable cause in the emergency aid context has been abolished. Other courts citing to *Kentucky v. King* and other Supreme Court opinions have reached that same understanding. *See e.g., United States v. Tepiew*, 859 F.3d 452, 457 (7th Cir. 2017), *cert. denied*, No. 17-5883, 2017 WL 3971077 (U.S. Oct. 10, 2017) ("emergency aid doctrine requires that the officers only have an objectively reasonable basis for believing that a person within [the house] is in need of immediate aid"; no discussion that probable cause is required); *McInerney v. King*, 791 F.3d 1224, 1232 (10th Cir. 2015) ("Reasonable belief does not require absolute certainty; the standard is more lenient than the probable cause standard."); *Burke v. Sullivan*, 677 F.3d 367, 371 (8th Cir. 2012)("police officer may enter a residence without a warrant ... [when] the officer has a reasonable belief that an emergency exists requiring his or her attention…. The Supreme Court has held that reasonable belief ... is a less exacting standard than probable cause.").

---

[1] In *Santiago*, neither probable cause nor exigent circumstances were advanced as justifying the warrantless entry into Santiago's home. The sole issue was whether Santiago gave the deputies consent to enter and search his home. *Santiago*, 410 F.3d at 198.

A differing requirement of probable cause may exist in exigent circumstance cases (apart from the emergency aid doctrine). *See United States v. Aguirre*, 664 F.3d 606, 610 (5th Cir. 2011) ("[Exigent circumstances] is available only on a showing by the government that the officers' entry into the home was supported by probable cause and justified by an exigent circumstance. '[N]o amount of probable cause can justify a warrantless search or seizure absent [such] exigent circumstances.' In other words, even if the officers had probable cause to search the mobile home, they had to have exigent circumstances to enter without a warrant."); *United States v. Almonte-Baez*, 857 F.3d 27, 33 (1st Cir. 2017) ("when entry into private premises is reasonably necessary to head off the imminent loss of evidence, a law enforcement officer armed with probable cause normally may enter the premises without a warrant").

In this case the Government relies upon the "emergency aid" exception to the warrant requirement. The Court finds that the Government has met its burden to establish the emergency aid exception. Officer Aguilar's testimony was extremely credible testifying that he fully expected to locate a woman being held against her will at the Defendant's residence. A reasonable and prudent person standing in the shoes of the officers in the morning of September 27 would have considered this case an emergency that required a response. A 911 call stated that a woman was "tied up" at the residence. During the minutes the officers had in reaching the scene they were aware of a report that an AR-15 rifle was at the home and a suspected burglar resided there. The officers made a reasonable request for the two men inside the home to step outside, and the protective sweep and search for the woman lasted a couple of minutes. No inappropriate search of the premises was done before a warrant was secured, after which a more complete search was conducted.

**Conclusion**

Defendant's motion to suppress (docket no. 41) is denied.

SIGNED this 20th day of November, 2017.

XAVIER RODRIGUEZ

UNITED STATES DISTRICT JUDGE